# In the United States Court of Federal Claims

No. 12-395L
(Filed:  December 16, 2015)

|  |  |
|---|---|
| SCOTT J. LAMBERT, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)<br>) |
| THE UNITED STATES, | )<br>) |
| Defendant. | )<br>)<br>) |

Rails-to-Trails; Class Action; Final
Approval of Settlement Agreement;
Modification and Approval of Class
Counsel Fees

## ORDER GRANTING FINAL APPROVAL TO PARTIES' PROPOSED
## SETTLEMENT AND APPROVING WITH MODIFICATION CLASS
## COUNSEL'S MOTION FOR FEES

This rails-to-trails class action arises from the conversion of a railroad corridor in Shelby County, Tennessee to a recreational trail.  The plaintiffs alleged that the government "took" their property interests without just compensation when it authorized the conversion of the rail corridor to a recreational trail.

This action was originally brought on behalf 100 landowners who collectively own 107 parcels of land along a 6.26-mile corridor in Shelby County that are the subject of this lawsuit.[1]  On June 24, 2015, upon agreement of the parties, the court certified two subclasses:  (1) plaintiffs owning property adjacent to the 4.15-mile segment from Shelby Farms to the rail depot site at "B" street in downtown Cordova, Tennessee ("subclass I");

---

[1] On December 4, 2015, the parties filed a joint stipulation (ECF No. 100) to voluntarily dismiss with prejudice the claims of two plaintiffs pursuant to RCFC 41(a)(1).  Based on the parties' representations, the claims by Rentenbach Properties, Inc. and AT&T f/k/a South Central Bell Telephone in this case are **DISMISSED**.

and (2) plaintiffs owning property adjacent to the 2.11-mile segment from the rail depot site to the end of the line ("subclass II").

The parties reached a settlement agreement for the appraised fair market value of the subclass I plaintiffs' property and prejudgment interest.  On September 18, 2015, pursuant to Rule 23(e) of the Rules of the Court of Federal Claims ("RCFC"), the parties submitted a joint motion seeking the court's approval of the settlement and requesting that the court set a date for a fairness hearing (ECF No. 91).  On September 30, 2015, the court granted preliminary approval to the parties' proposed settlement and scheduled a public fairness hearing, which was held on November 13, 2015 (ECF No. 92).  In addition, on October 16, 2015, class counsel filed a motion for a contingency fee to be paid from the settlement fund (ECF No. 93).  For the reasons stated below, the settlement is **APPROVED**, and class counsel's contingency fee arrangement is **APPROVED-IN-PART**.

I.     **Background**

    A.     **Procedural History**

The plaintiffs filed their original complaint in this case on June 19, 2012.  The plaintiffs allege that they are fee simple owners of parcels which were subject to a railroad easement and that, under Tennessee state law, the scope of the railroad easement was exceeded when CSX Transportation, Inc., ceased to use the corridor for its railroad operations and transferred its interest in the corridor to the Memphis Community Connector for railbanking and interim trail use under section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d).  On September 11, 2012, the court granted the parties' motion to certify the case as an opt-in class action pursuant to RCFC 23 (ECF No. 12).

Thereafter, the parties engaged in extensive discovery and settlement discussions. Because a Trail Use Agreement had not yet been reached for the subclass II plaintiffs' parcels, on June 24, 2015, upon agreement of the parties, the court certified the two subclasses to allow the parties to proceed with settlement of the subclass I plaintiffs' claims (ECF No. 84).

### B.      Proposed Settlement for the Subclass I Plaintiffs

Under RCFC 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  In implementing RCFC 23(e), courts typically review the proposed settlement for a preliminary fairness evaluation and direct notice of the settlement to be provided to the class, and then grant final approval of the proposed settlement following notice to the class and a fairness hearing.  Barnes v. United States, 89 Fed. Cl. 668, 670 (2009).

The government and class counsel have come to an agreement on a settlement of claims by the subclass I plaintiffs.  On September 18, 2015, pursuant to RCFC 23(e), the parties filed a joint motion requesting approval of the settlement, proposing notices to be sent to the subclass I plaintiffs, and requesting that the court set a date for a fairness hearing (ECF No. 91).  The parties stated that in reaching the agreement they conducted a joint appraisal of the fair market value of the subpart I plaintiffs' property interests for the alleged taking.  The value of the easement allegedly taken from each property was determined based on the area of land at issue and the appraised value of representative parcels in eight categories (small residential, medium residential, small industrial, large industrial, commercial office/retail, small acreage, institutional, and common area).

Under the proposed settlement, the subclass I plaintiffs will receive a total of
$3,642,023.71, of which $2,505,093.35 is principal for the value of the land allegedly
taken and $1,136,930.36 is interest.  The amount of principal to be paid for each claim of
the subpart I plaintiffs is listed in Exhibit A of the proposed settlement agreement
attached to the parties' joint motion (ECF No. 91-2).  The government has also agreed to
pay $256,862.10 in attorneys' fees and $20,875.71 in litigation costs under the Uniform
Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §
4654(c) ("URA").[2]  In total, the government has agreed to pay $3,919,761.52 to settle
this case.

### C.   Class Counsel's Motion for Fees and Proposed Division of the Common Fund for the Subclass I Plaintiffs

RCFC 23(h) requires the court to also review the reasonableness of class counsel's
proposed fee arrangement.  The proposed settlement provides for just compensation and
statutory attorneys' fees and costs in connection with the alleged taking of the subclass I
plaintiffs' property for the creation of a trail.  However, instead of accepting the statutory
fees, on October 16, 2015, class counsel filed a motion to treat the settlement as a
"common fund" and recover a 35% contingency fee (ECF No. 93).  Under class counsel's
requested fee arrangement, class counsel would receive $1,274,708.30 in attorneys' fees,
equal to 35% of the principal and interest, and $20,875.71 in litigation costs.  The

---

[2] The parties state that the government's total URA liability for both subclasses will be
approximately $306,819.79, subject to the additional fees and costs incurred to resolve the
subclass II plaintiffs' claims.  The attorneys' fees and litigation costs described above, totaling
$277,737.81, represent the subclass I plaintiffs' pro rata share, around 90.5%, of all fees and
costs incurred in the case.  The remaining $29,081.98, or 9.5%, will be applied to resolve all fees
and costs incurred through March 16, 2015 for subclass II plaintiffs.

plaintiffs would receive $2,624,177.51, equal to the remaining principal and interest and statutory attorneys' fees. Class counsel asserts that the requested arrangement is provided for in the contingency fee agreements between class counsel and some of the subclass I plaintiffs and is expressly stated in the provision regarding attorneys' fees and costs in the court-approved class notice.[3] In addition, because the amount the subclass I plaintiffs would receive includes statutory attorneys' fees, class counsel states that the "effective fee" to be paid by the landowners would be approximately 28%.

Class counsel argues that the URA does not preclude a court from granting fees from a common fund. In addition, class counsel asserts that this court has, in other cases, awarded contingency fees within the range requested in this case. Finally, class counsel argues that the requested fee is substantively reasonable based on factors this court has considered in other cases, in particular the result for class members.

In response, the government argues that class counsel's motion for fees should be denied because the common fund doctrine does not apply where just compensation is determined individually for each class member and because not every plaintiff signed a contingency fee agreement. In the alternative, the government argues that even if the common fund doctrine applies, the court should conduct a "lodestar cross-check,"

---

[3] The class notice included the following information for potential class members: "You are not required to pay any money to be included in this action. If the case is unsuccessful, you will have no obligation for attorneys' fees or costs. Only if the Class Counsel are successful in obtaining an award for you, will they be paid from the greater of (1) a contingency fee equal to 35% of the total recovery or (2) the attorney's fees and litigation expenses—to the extent the Court determines that such fees and expenses are reasonable—that may be paid by the United States pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4654 (c)." ECF No. 19-1.

comparing class counsel's requested contingency fee to the negotiated fee under the URA, to determine whether class counsel's requested fees are reasonable.

### D.      Preliminary Approval and Fairness Hearing

At the preliminary approval stage, "[i]n deciding whether a settlement falls within the range of approval, courts have considered a variety of factors, among them: (i) whether the settlement agreement appears to be the product of serious, informed, non-collusive negotiations; (ii) whether it improperly grants preferential treatment to class representatives or other members of the class; (iii) whether counsel are experienced and have been adequately informed of the facts via discovery; and (iv) whether the agreement otherwise has obvious deficiencies." Barnes, 89 Fed. Cl. at 670.  Upon review of the settlement agreement, the court did not find any collusive activity, preferential treatment, or other deficiencies in the proposed settlement.  The court therefore granted preliminarily approval of the proposed settlement agreement.

When parties propose to resolve a certified class' claims through settlement, RCFC 23(e) also requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  RCFC 23(e)(1).  After a review of the parties' proposed notice plan and notice forms, the court ordered class counsel to mail a court-approved notice of the settlement to each member of the opt-in class along with a form that would allow class members to submit comments and make a request to speak at the fairness hearing.

On November 9, 2015, class counsel filed a notice of class members' responses to the subclass I settlement notice (ECF No. 94).  Class counsel received express approval of the settlement and fee request for 78 of the 88 claims.  See Notice of Class Members

Responses 1.  Six subclass I plaintiffs submitted comments.  LaWanda Thornton objected

to the proposed settlement amount and to class counsel's fee request.  Ms. Thornton

commented:

> I was told my approx. amt was $13,000.00 in 2013 & that it would
> draw interest until settled!!  (To be paid to me from U.S. government.)  In
> 2013 or so I was told that at that time my settlement amount was $13,000 &
> would accrue interest.  I explained this to the attorney we met in Memphis.
> I'm used to attorney fees of 30%.  I was told 33% when I met him.  Now
> letter states 35%!!  30% is the average in every state that I know.

Neshoba Unitarian Universalist Church also objected to class counsel's fee request and

noted that it wished to appear at the hearing.[4]  The church commented that:

> We are not aware of any contractual, legal or ethical basis for the
> lawyers' proposal to calculate part of their contingency fee on the interest
> accrued.  This is unfair and is not common practice.  Also the 35% fee is
> too high and it should be capped at 1/3 of the principal portion of the
> settlement.

Barry Griffith objected to the proposed settlement of fees to be paid by the government

and to class counsel's request for contingency fees; Mr. Griffith commented that

"$4,000+ for over ½ acre is unreasonable."[5]  Francis Cagle approved the settlement and

distribution of fees but commented that "the attorney fees are too high."  Cordova

Properties, Inc., approved the settlement and distribution of fees and commented that they

would like to attend the hearing but that their attendance was "tentative."[6]  Lastly, Marie

Ivey's estate approved the proposed settlement and distribution of fees, but noted that

Ms. Ivey's parcels are now under different names.

---

[4] They did not appear at the fairness hearing.

[5] Mr. Griffith objected to the proposed settlement of fees to be paid by the United States but did
not explain his objection on the comment form or by participating in the fairness hearing.

[6] They did not appear at the fairness hearing.

On November 12, 2015, class counsel filed a notice of responses to the plaintiffs'
comments and objections (ECF No. 96) and on November 13, 2015, the court held a
telephonic fairness hearing.  As noted above, none of the plaintiffs appeared at the
fairness hearing.  The court did, however, consider all of the comments and objections
that were submitted.  With respect to the comments and objections submitted by Ms.
Thornton, the Neshoba Unitarian Universalist Church, Mr. Griffith, and Mr. Cagle to
class counsel's fee request, class counsel responds that the requested fee is fair,
reasonable, and warranted.  Class counsel states that each plaintiff who opted in to the
class action acknowledged that attorneys' fees and costs would be equal to the greater of
the amount available under the URA or "a contingency fee equal to 35% of the total
recovery."  With regard to the Neshoba Unitarian Universalist Church's comment that
fees should be capped at "1/3 of the principal portion of the settlement," class counsel
states that there is no prohibition under federal or Tennessee law against either a 35% fee
or a contingency fee including the interest portion of a settlement, and that the "total
recovery" described in the court-approved notice to the plaintiffs includes the interest
portion of the settlement.  Class counsel also denies telling Ms. Thornton that her fee
would be 33%.  Finally, class counsel states that the effective fee each plaintiff will pay,
after adding back in the plaintiffs' shares of statutory fees, will be 27.9%.  Regarding
Ms. Thornton's objection to the settlement amount, class counsel responds that
Ms. Thornton's total settlement will be $9,709.00 for property damage and $4,266.08 for
interest through the end of 2015; therefore, her total settlement will in fact exceed
$13,000.00 and will continue to accrue interest until the settlement is finally paid.  In
response to Mr. Griffith's objection to the settlement amount, class counsel notes that Mr.

Griffith will receive compensation for only the land that was taken—503 square feet of

the former railroad corridor—and not the entire area of his property.  As such,

Mr. Griffith is mistaken with respect to the extent of the taking.  Additionally, class

counsel notes that Mr. Griffith is also a plaintiff in subclass II and should receive

compensation for that land as well.  Finally, class counsel states that the administrative

issues regarding Ms. Ivey's estate will be resolved with the estate's representative.

## II.     Discussion

### A.      The Settlement Agreement is Fair, Reasonable, and Adequate.

The court may approve a proposed settlement in a class action case "only after a

hearing and on finding that it is fair, reasonable, and adequate."  RCFC 23(e)(2); see also

Moore v. United States, 63 Fed. Cl. 781, 783 (2005).  The court has discretion to accept

or reject a proposed settlement, but it may not alter the proposed settlement, nor may it

decide the merits of the case or resolve unsettled legal questions.  Adams v. United

States, 107 Fed. Cl. 74, 75-76 (2012) (citing Evans v. Jeff D., 475 U.S. 717, 726-27

(1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

There is no definitive list of factors that the court must apply in considering a class

action settlement.  Raulerson v. United States, 108 Fed. Cl. 675, 677 (2013).  However,

in determining whether a settlement agreement is "fair, reasonable, and adequate," courts

have found the following factors instructive:  (1) the relative strengths of plaintiffs' case

compared to the proposed settlement; (2) the recommendation of the counsel for the class

regarding the proposed settlement, taking into account the adequacy of class counsel's

representation of the class; (3) the reaction of the class members to the proposed

settlement, taking into account the adequacy of notice to the class members of the

settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the provision for attorneys' fees; and (6) the ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity.  Sabo v. United States, 102 Fed. Cl. 619, 626-27 (2011) (citation omitted).

In this case, after the court granted class certification, the parties engaged the services of an expert real estate appraiser, J. Walter Allen, MAI, FRICS.  See Joint Status Report filed February 28, 2013 (ECF No. 23).  Counsel for the parties instructed Mr. Allen to estimate the fair market value of representative parcels in the "before condition" and the "after condition," as of the alleged taking on October 26, 2007.  The parties requested that Mr. Allen prepare his appraisals in conformance with the Uniform Standards of Professional Appraisal Practice and the Uniform Appraisal Standards for Federal Land Acquisitions.  The parties also asked Mr. Allen to assist them in identifying representative parcels based on property characteristics.  Counsel for the parties met with Mr. Allen in Cordova, Tennessee in April 2013 for a site visit.  During the visit, counsel for the parties and Mr. Allen inspected the length of the corridor and viewed all of the properties at issue.  In addition, class counsel called attention to unique parcels and legal and factual issues that class counsel believed should be addressed in the appraisal process.  Mr. Allen subsequently returned to view the properties at issue without counsel present.  After the site visits, Mr. Allen and the parties agreed to group similarly situated properties into the eight categories described above.  Mr. Allen and the parties selected a representative sample from each category for Mr. Allen to appraise.  Mr. Allen prepared an appraisal report for each of these eight sample properties, which he provided to the parties in October 2013.  After Mr. Allen provided his analysis, the parties had multiple

meetings with Mr. Allen to review his valuation conclusions.  Mr. Allen had an

opportunity to respond to questions and comments submitted by counsel and the ensuing

discussions helped to guide his preparation of the final appraisal reports.  Due to the

extensive review of Mr. Allen's conclusions, Mr. Allen's final appraisal reports were not

approved by the parties until May 2014.

Class counsel also measured the frontage for each of the parcels along the

corridor, which were used to compute the area of land taken for each of the plaintiffs.

These frontage measurements were subsequently sent to government counsel for

inspection.  Once the parties agreed on frontage measurements, these measurements were

provided to Mr. Allen.  After finalizing his appraisal reports on the selected

representative parcels, Mr. Allen applied the appraised values of the representative

parcels to the remaining parcels using the frontage measurements to estimate the value of

the easement allegedly taken from the remaining properties in each category.[7]

Class counsel reviewed the terms of the proposed class action settlement with the

class representatives who the court designated to protect the interest of the class, in

accordance with RCFC 23(a)(4).  The class representatives determined that the proposed

settlement is in the best interests of the subclass I plaintiffs.  Additionally, during the

---

[7] Counsel for the parties state that they reached a compromise agreement to settle the class action
that included a value of the easements held to have been taken and interest on that negotiated
valuation amount.  However, counsel for the government advised class counsel that the
government could not settle the just compensation amounts for any of the landowner claims that
fell within the portion of the railroad corridor where no trail use agreement had been reached.
On August 14, 2015, the court stayed the case and the parties continued to negotiate.  On
June 24, 2015, the court granted the parties' joint motion to establish two subclasses in order to
allow the parties to settle the subclass I plaintiffs' claims, which include the portion of the trail
with a trail use agreement.

settlement process, the subclass I plaintiffs were given an opportunity to meet with counsel to address any questions or concerns they may have had.

Plaintiffs were also given the opportunity to submit written objections and to participate in a telephonic fairness hearing.  The subclass I plaintiffs expressly approved of the settlement and fee request for 78 of the 88 claims.  See Notice of Class Members Responses 1.  However, as stated above, two plaintiffs, Ms. Thornton and Mr. Griffith, objected to the settlement amount.  The court has considered Ms. Thornton and Mr. Griffith's comments and finds that they do not warrant disapproval of the negotiated settlement amounts for principal and interest.  First, Ms. Thornton will receive $9,709.00 in compensation for the taking of her land but her total recovery will exceed $13,000 due to accrued interest.  See Joint Mot. Ex. A at 4.  Second, while Mr. Griffith's recovery might be less than what he expected, the court understands that he will receive compensation for the 503 square feet of land that was taken and resolved in this settlement and not for his entire property.  The court notes that Mr. Griffith is also a plaintiff in subclass II; therefore, Mr. Griffith might receive additional compensation for the property at issue in the remaining case.  In sum, the court finds that the subclass I plaintiffs' objections to the proposed amounts for principal and interest under the settlement do not show that the settlement is unfair, unreasonable, or inadequate.

The court further finds that the URA attorneys' fees and costs agreed to under the settlement are reasonable.  The URA provides that plaintiffs may be reimbursed for "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred" during the litigation, as approved by the Attorney General.  42 U.S.C. § 4654(c).  In evaluating such awards, the Attorney General's

opinion is entitled to deference, and the court does not conduct the same in-depth analysis as it would if it were rendering the award.  Moore, 63 Fed. Cl. at 785 n.6.  In this case, the court finds no indication that the amount of attorneys' fees and costs to be paid to the plaintiffs under the URA are unreasonable.

For all of these reasons, the court holds that the parties' settlement agreement is fair, reasonable, and adequate and warrants approval.

### B.   Class Counsel's Contingency Fee Arrangement

Under RCFC 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  For the reasons stated below, the court finds that class counsel may retain 30%, as opposed to 35%, of the negotiated settlement amounts for principal and interest and may not retain the attorneys' fees and costs provided under the URA.[8]

### 1.   Class Counsel's Proposed Common Fund Arrangement is Lawful.

After considering the record and relevant case law, the court finds that the common fund arrangement class counsel has proposed is lawful.  Class counsel asks this court to find that a common fund exists and to allow class counsel to recover a percentage of that fund.  "Recovery under the common fund doctrine stems from the equitable power of a court to create the obligation for attorney fees against benefits some received as a result of the advocacy of another."  Knight v. United States, 982 F.2d 1573, 1580 (Fed. Cir. 1993).

---

[8] Class counsel has agreed not to retain the URA attorneys' fees.  The court finds that it should also provide the subclass I plaintiffs with the costs agreed to under the URA based on the language of the class notice in this case.

Class counsel argues that nothing in the URA's plain language forbids an award of attorneys' fees from a common fund.  In addition, class counsel argues that the purpose of fee shifting statutes such as the URA is to make a prevailing plaintiff whole, not to determine what the plaintiff must pay his or her attorney.  See Venegas v. Mitchell, 495 U.S. 82, 90 (1990).  Moreover, according to class counsel, the common fund doctrine developed to spread fees between plaintiffs, as opposed to shifting fees to the defendant, so that each class member pays a proportional share of the reasonable fees that class counsel earned.

Although none of the plaintiffs have challenged the creation of a common fund in this settlement, the government asserts that Venegas does not apply because class counsel has not shown that each subclass I plaintiff agreed to the proposed fee arrangement.  In particular, the government argues that because class counsel did not provide copies of signed contingency fee agreements or aver that the fee structure was explained to prospective class members, the court cannot be certain that class members knew of the common fund arrangement.  In addition, the government argues that the settlement award does not create a common fund because the parties negotiated just compensation on a parcel-by-parcel basis.[9]

---

[9] The government asserts that it has standing to respond to class counsel's motion for fees to oppose an impermissible or excessive fee award even though the motion does not require the government to pay additional fees.  In Geneva Rock Products, Inc. v. United States, 119 Fed. Cl. 581, 592-93 (Fed. Cl. 2015), the court found that because no class member had objected to class counsel's fee request and the government's liability or susceptibility to damages was not affected by the request, the government lacked standing to challenge the proposed contingency fee. However, the court considered factors similar to those raised by the government as part of its duty to independently review the reasonableness of class counsel's proposed fee.  Id. at 593. Although this court does not agree that the government has standing, this court will also consider the issues raised in the government's response as part of its duty to independently review class counsel's proposed fee.

The court agrees with class counsel with regard to the notice of the contingency fee arrangement and common fund issues.  The Supreme Court has found that an attorney may recover under a contingency fee agreement even if the defendant is statutorily obligated to pay attorneys' fees.  See Gisbrecht v. Barnhart, 535 U.S. 789, 806 (2002); Venegas, 495 U.S. at 86-88.  Courts in similar cases have awarded contingency fees to class counsel notwithstanding the availability of statutory fees, so long as the total fee is reasonable.  See, e.g., Moore, 63 Fed. Cl. at 785-86 ("A request for some percentage of the total award is not inappropriate, despite the fact that the parties have settled the matter of statutory fees and that the resulting fee would be higher than that received under the fee-shifting statute." (citing Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003))).

In this case, the subclass I plaintiffs either signed a contingency fee agreement at the outset of the litigation or joined the litigation with notice that attorneys' fees and costs would "be paid from the greater of (1) a contingency fee equal to 35% of the total recovery or (2) the attorneys' fees and litigation expenses—to the extent the Court determines that such fees and expenses are reasonable—that may be paid by the United States pursuant to the [URA]."  ECF No. 19-1.  The government cannot be heard to complain that the plaintiffs did not understand the fee arrangement.  Indeed, the subclass I plaintiffs who objected to class counsel's fee request commented only on the proposed percentage, not the treatment of just compensation and interest as a common fund.

Moreover, as the government acknowledges, the Court of Federal Claims has routinely applied the common fund doctrine and allowed counsel to recover a contingency fee in rails-to-trails cases and other opt-in class actions where plaintiffs

signed similar agreements.  See Thomas v. United States, 121 Fed. Cl. 524, 530-31

(2015) (appeal filed); Sutton v. United States, 120 Fed. Cl. 526 (2015) (appeal filed);

Haggart v. United States, 116 Fed. Cl. 131, 148-49 (2014) (appeal filed); Raulerson, 108

Fed. Cl. at 679-80.  Unless this court is given contrary instructions by the circuit, there is

no reason not to decide this case consistently with the other Court of Federal Claims

cases addressing this issue.

### 2.    Class Counsel's Proposed Contingency Fee Agreement is Reduced to a Percentage Consistent with Similar Class Actions.

Class counsel argues that the percentage of the common fund they seek to recover,

35% of the negotiated amounts for principal and interest, is within the acceptable range

for this type of case and that the total amount of the fees they seek to recover is

substantively reasonable in light of the result for the subclass I plaintiffs.  The

government argues that if the court applies the common fund doctrine in this case, the

court should not approve class counsel's request without conducting a lodestar analysis.

The government suggests that 35% is too high given the amount of fees agreed to under

the URA.

In determining the appropriate percentage for recovery of fees from a common

fund, this court has applied the following factors: (1) the quality of counsel; (2) the

complexity and duration of litigation; (3) the risk of non-recovery; (4) the fee that likely

would have been negotiated between private parties in similar cases; (5) any class

member's objections to the settlement terms or fees requested by class counsel; (6) the

percentage applied in other class actions; and (7) the size of the award.  Haggart, 116

Fed. Cl. at 145-46 (citations omitted); see also Moore, 63 Fed. Cl. at 787 (citing Manual

for Complex Litigation (Fourth) § 14.121).[10]

Here, unlike in other recent rails-to-trails class actions, several of the plaintiffs

objected to the size of class counsel's fee request.  The court finds that the subclass I

plaintiffs' objections require the court to examine the requested fees and, together with a

review of the fees approved in other cases, warrant decreasing the percentage at issue.

The subclass I plaintiffs either expressly agreed to class counsel's requested

contingency fee or opted into the class action with notice that class counsel's fees and

costs would "be paid from the greater of (1) a contingency fee equal to 35% of the total

recovery or (2) the attorneys' fees and litigation expenses [available under the URA]."[11]

However, the court finds that class counsel's requested 35% contingency fee, or

$1,274,708.30, would result in a higher effective fee (taking into account the URA fees

and costs that plaintiffs will retain) for the subclass I plaintiffs than the effective fees this

court has approved in other rails-to-trails class actions.  Class counsel states that the

effective fee in this case would be approximately 28%, or $1,017,846.20, based on the

---

[10] While the loadstar method may be applied in deciding fees under a fee-shifting statute, where, as here, a common fund has been established, the court is not "bound by any one methodology" in determining "reasonableness" but must take into consideration the individual circumstances of the case to ensure that the overall rate is reasonable.  Moore, 63 Fed. Cl. at 786 (citing Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991)).  Therefore, the court disagrees with the government that a more involved lodestar determination is required in this case.  See also Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[A] percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

[11] The court has found no restriction under federal law or Tennessee law against a 35% fee or a contingency fee on the interest portion of a settlement.  Tennessee law limits attorneys' fees in certain types of cases, such as medical malpractice claims.  See Tenn. Code Ann. § 29-26-120.  However, there is no evidence that the claims in this case are subject to such regulation.

amount plaintiffs would receive under class counsel's request taking into account the URA fees and costs.  In Sutton, 120 Fed. Cl. at 532-33, and Thomas, 121 Fed. Cl. at 531-32, the court approved class counsels' requests for a 35% recovery from the common fund of principal and interest but in Sutton the effective fee for plaintiffs was only 14% and in Thomas the effective fee was 24%.  See also Bishop v. United States, No. 10-594, 2013 WL 4505991, at *1 (Fed. Cl. Aug. 19, 2013) (approving a 33% contingency fee resulting in an effective fee of approximately 16.0%); Voth, 108 Fed. Cl. at 106 (approving a 40% contingency fee resulting in an effective fee of 22%); Moore, 63 Fed. Cl. at 785-86 (approving a contingency fee equal to 40% of principal and interest, resulting in an effective fee of 24%, and noting that although "40% is within the acceptable range, awards more typically range between 20% to 30% of the total fund, with 50% being the upper limit).  But see Raulerson, 108 Fed. Cl. at 679-80 (approving a contingency fee equal to 33% of principal, interest, and URA fees, resulting in an effective fee of 30%).

Taking into account the objections of the subclass I plaintiffs and the fees awarded in other cases, the court finds that a reduction of the contingency fee from 35% to 30%, to $1,092,607.11, is appropriate.  In keeping with rates approved in other cases, this results in an effective fee of 22% based on the subclass I plaintiffs' retention of the attorneys' fees and costs paid under the URA.

## III.   Conclusion

For the foregoing reasons, the parties' proposed settlement agreement for the subclass I plaintiffs, including the attorneys' fees and costs agreed to as authorized by the URA, is **APPROVED**.  Class counsel's contingency fee agreement is **MODIFIED** from

35% to 30% and the subclass I plaintiffs shall retain both the URA fees and costs awarded.  Pursuant to RCFC 54(b), there being no just reason for delay, the Clerk is directed to enter judgment accordingly for the subclass I plaintiffs in the principal amount of $2,505,093.35 plus pre-judgment interest from October 26, 2007, the date of the alleged taking, calculating the rate of interest using Moody's AAA bond rates and compound interest.  The interest is calculated at $1,136,930.36 as of December 31, 2015 and will continue to accrue until the plaintiffs are paid.  The judgment also includes $256,862.10 as reimbursement for attorneys' fees and $20,875.71 as reimbursement for litigation costs under the URA.

       **IT IS SO ORDERED.**

s/Nancy B. Firestone_____<br>
NANCY B. FIRESTONE<br>
Judge